"The lessors of the plaintiff are the other two children of Robert Hilliard, the ancestor. Martha, one of the daughters, intermarried with Norfleet Harris, some time in 1790, and on 25 December, 1792, he by deed conveyed the land in dispute to William Bridgers, under whom the defendant claims. Martha, the wife of Norfleet Harris, was no party to that deed. Norfleet Harris had issue by his wife, Martha, a son, Robert Hilliard Harris, the only issue of that marriage. Martha, the wife of Norfleet Harris, died some time in 1793. Norfleet Harris married a second wife and had issue by her, Elizabeth and Richard, who are living. Then Robert H. Harris, the son, died some time in (393) 1799, under age, intestate, and without issue. Norfleet Harris, the father, died 22 October, 1807.
"The question submitted to the Supreme Court is, Who are the heirs at law of the deceased son, Robert H. Harris? Are his half brother and sister on the part of his father? Is the father? Or are the plaintiffs, who are the aunts of the intestate son on the maternal side of the whole blood? If the latter, then judgment to be entered for the plaintiffs for the land in the declaration. If otherwise, then judgment for the defendant."
The question in this case is whether the aunt of the whole blood, on the side of the mother, from whom the lands were derived by descent, shall take in exclusion of a brother of the half blood on the side of the father. And this will depend upon the effect of the acts of 1784.
We will, however, premise that this is the first case that has ever occurred in which the action was decided solely upon this point, for inSheppard v. Reef two of the judges who decided for the defendant founded their opinion upon a title which may suppose the half blood acquired from the common mother; two other judges were of opinion that *Page 299 
the half blood could not take; and the remaining two were of opinion that the mother had title. A majority, therefore, being of opinion that the defendant had title, though they differed as to the mode by which he acquired it, the defendant was necessarily entitled to judgment; for we are free to declare that had the decision of the cause been upon this point, the length of time which has elapsed, and the effect the decision might have produced upon landed titles, and the decision being of the highest court known to our law, we should have felt ourselves bound by it, though at variance with our own opinion. But as that question still remains to be decided, and this case embraces it, we must perform our duty without any regard to what may have been the general understanding, or what particular inconvenience it may produce to individuals. We will proceed now to an examination of the (394) question.
Previous to the act of 1784 all the rules of the common law in relation to descents were in full force in this State; and it is quite certain that under those rules the half blood could in no case inherit. Whatever, therefore, the Legislature of this country have done in regulating descents of real estate so far operates as a repeal of the common law; and from this view it will result that the rules of the common law will continue in every particular but in those cases in which they have been altered. That the Legislature themselves considered it so must be apparent from their noticing in the preamble of the act of October, 1784, that it was necessary to amend the third section of the preceding act in order to let in the brothers of the half blood; for what but the common law could keep them out? The first act of 1784 does, as was contended by the counsel for the half blood, profess to regulate descents of real estates; and if the act had gone no further than section 3 without any proviso, there could have been no room for the present question; and it may be wondered, if they meant no more, why they should have superadded the subsequent clauses. The act then would have had the effect of placing the half blood upon the same footing as the whole blood. In other words, would have abolished the distinction. But it is a sound rule, and of very ancient date, that in construing acts of Parliament the meaning of the Legislature, in a particular part of an act, is to be ascertained by all they have said upon the same subject; for it will rarely happen that the act as it finally passed has undergone no alteration as to the extent of the design of the Legislature from the time it was introduced, and this reasoning, therefore, applies with peculiar force to the operation of a proviso.
To section 3 a proviso is added that when an intestate shall have half blood on father's side, and half blood on mother's side, that the half blood *Page 300 
on the side from which the land descended shall exclude the other. Now, it might be asked, if the half-blood brother of the line of the first purchaser is permitted to excluded the brother who is not of that line, and this for no other reason than on the score of blood, can the brother (395) of the whole blood be supposed not to do so? And yet this will result from the construction contended for.
In section 7 of the same act the Legislature declares that in case of the death of a child, intestate and without issue, or brother or sister, a dying with either of which had already been provided for, the estate should vest in the parent from whom derived; and in case of a purchase, it should vest in the father; but if he should be dead, then in the mother and her heirs; and if the mother be dead, then the heirs of the father; and indefault thereof, the heirs of the mother. And the Legislature in the same year made an alteration in this section, declaring that by accident the descent may be altered and the paternal excluded, which in all other instances is most favored. From the proviso, therefore, of section 3, from section 7 of the same act, paying respect to the ancestor from whom the estate descended, and from the amendatory or explanatory act of October, 1784, stating that the paternal line in all instances is most favored, and assigning that as the motive for making the amendment, it is clear that it was not the intention of the Legislature in all cases to put the half blood upon an equality with the whole blood; for though in the first section of the act of October, 1784, there are some general expressions that it was the intention of the Legislature to let in the half blood equally with the whole blood, yet from the preamble it is plain that they were only guarding against a critical construction of section 3 of the act of April, 1784, which possibly might only let in the sisters of the half blood; and the only effect of this clause is to make brothers of the half blood capable of inheriting as well as sisters of the half blood.
If, then, this be the proper construction of this clause, we have abundant reason to believe that the Legislature had not entirely lost sight of the principles of the common law in looking for the heirs in that stock from whom the land had been derived. That they narrowed down the principle, it is true, and would not permit one stock to exclude another upon a feigned presumption; for in cases of actual purchase, as (396) the lands had not been derived through any channel by inheritance, they have permitted the half blood to share equally with the whole blood, provided they are of that line most favored by law; for we see that in a case of actual purchase they do not lose sight of this principle, for they declare that in case of a death without issue, brother or sister, that the paternal line shall be, as in all other instances, mostfavoured, and exclude the maternal. *Page 301 
To us, therefore, it appears that the general terms of section 3 of the first act have been so cut down and controlled, as well by the proviso as by section 7 and the amendatory act of October, 1784, and the first clause of that act having no other than to place brothers of the half blood upon the footing of sisters of the half blood, that in a case of a person dying intestate, none can claim to inherit the lands which the intestate acquired by descent but those who are of the blood of the ancestor from whom derived, and that, therefore, there must be
Judgment for the plaintiff.
DANIEL, J., was the counsel in this cause, and therefore gave no opinion, but expressed himself to be of the same opinion.
NOTE. — The canons of inheritance have been altered since the act of 1784, by the act of 1808, which see in 1 Rev. Stat., ch. 38.
Cited: Ballard v. Hill, post, 404. But see Ballard v. Hill, 7 N.C. 410;Seville v. Whedbee, 14 N.C. 160.
(397)